```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION
```

ZOUHAIR HILAL                      §
a/k/a DANNY HILAL,                 §
                                   §
     Appellant,                    §
                                   §
v.                                 §     CIVIL ACTION NO. H-05-3776
                                   §
RANDY W. WILLIAMS,                 §
CHAPTER 11 TRUSTEE,                §
                                   §
     Appellee.                     §

## MEMORANDUM AND ORDER

Pursuant to 28 U.S.C. § 158, Appellant Zouhair Hilal a/k/a Danny Hilal ("Hilal") appeals the October 24, 2005, Order of the United States Bankruptcy Court for the Southern District of Texas, granting the Trustee's Motion for Order Approving Compromise and Settlement. Appellee, the Chapter 11 Trustee, has filed a Motion to Dismiss the Appeal as moot (Document No. 3). After having carefully reviewed the record, the procedural history, the applicable law, and the prior determination made by this Court denying Appellant's Emergency Motion for Stay, the Court concludes that Appellee's Motion to Dismiss this appeal as moot should be granted.

### I.  Procedural History

On February 4, 2005, Hilal filed a chapter 11 bankruptcy petition. That filing was precipitated by the forced sale of Hilal's interest in First Capital Interests, L.C.C. and Blue Moon Venture, L.L.C. That forced sale, in turn, was precipitated by

Hilal's failure and refusal to pay a state court judgment against him in the approximate amount of $79,000. A brief history of the state court proceedings which led to Hilal's bankruptcy filing is warranted.

On November 3, 2000, a judgment was entered in the 270th Judicial District of Harris County, Texas against Hilal and in favor of Johnny and Cassandra Bailey in the amount of approximately $90,000. Texas's Fourteenth Court of Apppeals affirmed the judgment, but reduced the amount of damages by $10,000. The Baileys, as judgment creditors, then assigned their interest in the judgment to Stephen Riner ("Riner"), their attorney. Thereafter, upon Riner's pursuit of assets to pay the judgment, the state court signed an order requiring Hilal to turn over his interest in First Capital Interests, L.L.C., a real estate company in which he had a purported interest, to the Constable for public sale in satisfaction of the judgment. Hilal informed the Constable that he owned no interest in First Capital. On June 16, 2004, the Harris County clerk issued a Writ of Execution commanding any Texas sheriff or constable to execute on all property owned by Hilal, including First Capital and Blue Moon Ventures, L.L.C., another real estate company. Notice of the public sale was sent to Hilal and his attorney on August 4, 2004. Hilal again asserted that he owned no interest in the two companies. At the constable's public sale on September 10, 2004, Riner bought Hilal's interest in First Capital and Blue Moon for approximately $18,000. At the time of

the sale, Hilal continued to maintain that he had no interest in the companies.

Afterwards, Hilal challenged the sale in state court, claiming that an interest in a limited liability company is not subject to an execution order, and therefore the sale was void. In October, 2004, the state trial court denied Hilal's Motion to Declare the Sale Void, and the next month the Fourteenth Court of Appeals denied Hilal's Application for Writ of Mandamus. The Texas Supreme Court denied Hilal's Application for Writ of Mandamus on February 2, 2005, and then Hilal promptly filed his chapter 11 bankruptcy petition.

After Hilal filed bankruptcy, both Hilal and Riner filed various adversary proceedings seeking control of First Capital and Blue Moon, Adversary Nos. 05-3297, 05-3298, 05-3299, and 05-3300. In connection therewith, Hilal acknowledged that he did have an ownership interest in both companies, and offered to pay Riner $113,472.48 to "undo" the Constable's sale. Riner rejected the offer. On June 1, 2005, Randy Williams was appointed as the chapter 11 trustee.

The Trustee, seeking to recover First Capital and Blue Moon for the bankruptcy estate, analyzed the various claims against Riner, and concluded that it was in the best interest of the estate to settle the dispute with Riner rather than risk litigation over the ownership of the companies. Accordingly, Riner and the Trustee proposed a settlement of their claims that included the following provisions:

- The Hilal bankruptcy estate would pay to Riner $5 million within ten days of the 9019 Order.[1] Riner also agreed to pay $750,000 in taxes to the IRS.

- Riner would release to the Trustee all liens, claims and interests he held in First Capital and Blue Moon.

- The Trustee would assume ownership and management of First Capital and Blue Moon, and begin liquidation of the estate and payment to creditors.

- All pending litigation between the parties would be dismissed with prejudice.

A formal Motion to Compromise which contained essentially the same terms was filed in the bankruptcy proceeding on August 1, 2005.

Initially, Hilal and several creditors objected to the compromise. After reviewing the compromise, however, the estate's creditors, including the IRS, which by far was the largest creditor, withdrew their objections. On October 21, 2005, a day-long evidentiary hearing was held before United States Bankruptcy Judge Wesley W. Steen on the Motion to Compromise, after which Judge Steen orally approved the compromise, but issued a temporary stay to allow time for Hilal to seek a formal stay of the ruling. On October 24, 2005, the "Order Approving Compromise and Settlement," otherwise known as the "9019 Order," was entered, and on that same day Hilal filed his Motion for Stay.

---

[1] Bankruptcy Rule 9019(a) provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."

Hilal's Motion for Stay was heard on October 31, 2005. Hilal also filed a Motion for New Trial. At the conclusion of the hearing on the motion for stay, Judge Steen orally denied the motion, finding that Hilal had failed to establish the standards for a stay and that the harm to the estate if the compromise was not consummated was at least $20 million. An Order reflecting that ruling was entered on November 1, 2005. On that same date, Judge Steen also denied Hilal's Motion for New Trial. The compromise agreement was then promptly executed either on November 1, 2005, or November 2, 2005.[2]

On November 3, 2005, Hilal filed a Notice of Appeal in this Court. The next day he filed an "Emergency Motion for Stay Pending Appeal." (Document 9).[3] After a hearing held on November 7, 2005, this Court denied Hilal's Motion for Stay. (Document 14). On December 8, 2005, the Trustee filed the instant Motion to Dismiss the appeal (Document 3), arguing that Hilal's appeal has been rendered moot by the execution of the compromise agreement and Hilal's failure to obtain a stay.

---

[2] Hilal initially argued that the compromise and settlement were executed or "closed" on November 2, 2005. *See* Document No. 19. In subsequent filings, Hilal asserts that there is evidence that the compromise and settlement were executed or closed on November 1, 2005. Document Nos. 24 & 25.

[3] Due to docketing errors, Hilal's Emergency Motion for Stay was assigned Document No. 9 and the Trustee's later filed Motion to Dismiss was assigned Document No. 3. The filing dates, however, are correctly shown.

II. <u>Issues</u>

Hilal, who appeals from the 9019 Order entered by the Bankruptcy Court approving the compromise and settlement of the claims as between Stephen Riner and the bankruptcy estate, sets forth the following issues:

1. Did the Bankruptcy Court err and/or abuse its discretion in entering the Order Approving Compromise and Settlement?

2. Did the Bankruptcy Court err and/or abuse its discretion in entering the Order Denying Motion for New Trial?

3. Did the Bankruptcy Court err and/or abuse its discretion in finding and/or concluding that the proposed settlement was fair and equitable and in the best interest of the bankruptcy estate?

4. Did the Bankruptcy Court err and/or abuse its discretion in finding and/or concluding that the proposed settlement satisfied the requirements of Bankruptcy Rule 9019?

5. Did the Bankruptcy Court err and/or abuse its discretion in finding and/or concluding that the proposed settlement satisfied the requirements of <u>Protective Committee for the Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414 (1968)?

Appellant's Brief (Document No. 21) at viii. Appellee, on the other hand, argues that any complaints Hilal may have about the 9019 Order are moot given the full consummation of the compromise and settlement. Because the mootness issue raised by the Trustee will affect whether Hilal's appeal issues can or should be reached, it will be addressed first.

6

### III. Standard of Review – Mootness

"'[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" County of Los Angeles v. Davis, 99 S.Ct. 1379, 1383 (1979) (quoting Powell v. McCormack, 89 S. Ct. 1944, 1951 (1969)). Only when "it can be said with assurance that 'there is not a reasonable expectation . . .' that the alleged violation will recur," and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," will a case or issue be considered moot on the basis that "neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." Davis, 99 S. Ct. at 1383 (citations omitted).

In the bankruptcy context, "mootness" is a recognition that a case has gone past the point where equitable judicial relief is available. In re Manges, 29 F.3d 1034, 1038-39 (5th Cir. 1994). Equitable mootness, as it is known, allows "a reviewing court [to] decline to consider the merits of a confirmation order when there has been substantial consummation of the plan such that effective judicial relief is no longer available – even though there may still be a viable dispute between the parties on appeal." Id. at 1039. In determining whether a bankruptcy case should be dismissed as moot, a court considers three factors:

(1) whether a stay has been obtained;

(2) whether the plan has been "substantially con-summated"; and

> (3) whether the relief requested would affect either the rights of the parties not before the court or the success of the plan.

Id.; *see also* In re Hammersmith, 248 F.3d 1142, 2001 WL 184591 *3 (5th Cir. 2001); Ronit, Inc. v. Stemson Corp. (In re Block Shim Dev. Co.), 939 F.2d 289, 291 (5th Cir. 1991).

## IV. Discussion

The record shows that the Bankruptcy Court temporarily stayed the 9019 Order until October 31, 2005, to allow Hilal to file a formal, written motion for a stay. Hilal filed his motion on October 24, 2005, and it was heard and denied on October 31, 2005. Two days later, after the temporary stay had expired and Hilal had neither sought nor obtained a stay from a higher court, the compromise and settlement, in accordance with its terms, was consummated. Thus, Riner was paid $4,250,000, the IRS was paid $750,000 on Riner's behalf, and the Trustee gained control of First Capital and Blue Moon for the bankruptcy estate. Although the compromise and settlement was expeditiously consummated, such was provided for in the 9019 Order itself.[4]

Each of the factors to be considered in an equitable mootness evaluation under Manges supports the dismissal of this appeal as moot. First, at the time the compromise and settlement was consummated, there was no stay in place, nor was there a pending

---

[4] The written Order Approving Compromise and Settlement required Riner to be paid "[w]ithin 10 days of the entry date of this Order," which entry date was October 24, 2005.

motion for stay in either the bankruptcy court or this Court.  In addition, the Bankruptcy Court had explicitly determined that Hilal had not satisfied the requirements to obtain a stay.

A stay may be granted if the movant can make a substantial showing that he will suffer irreparable injury in the absence of a stay, that other parties will not be substantially harmed, and that the public interest will be served.  The granting of a stay places a case "*in stasis*," and prevents parties from relying on a settlement plan while an appeal is sought.  Manges, 29 F.3d at 1040.  However, "'a stay not sought, and a stay sought and denied, lead equally to the implementation of the plan of reorganization.'" Id. (quoting In re UNR Indus., Inc., 20 F.3d 766, 769-70 (7th Cir. 1994))  In other words, if the court denies a stay, then a reorganization plan may proceed and parties may rely on it just as if the stay had not been sought.  Id.

Here, as found by the Bankruptcy Court on October 31, 2005 (and later by this Court on November 7, 2005), Hilal did not make the required showing for a stay.  In the absence of a stay, the Trustee consummated the compromise and settlement in accordance with the 9019 Order.  Although Hilal complains that the Trustee could not, or should not, have consummated the compromise and settlement until the 9019 Order was final, that being ten days after Hilal's Motion for New Trial was denied, Hilal cites no legal or factual authority for that argument.  Indeed, there was no legal, factual, or other basis that required the Trustee to wait for ten days after denial of the motion for new trial before

consummating the compromise and settlement. "[T]he failure or inability to obtain a stay pending appeal carries the risk that review might be precluded on mootness grounds." Manges, 29 F.3d at at 1040. Here, regardless of the reason for not having obtained a stay, the absence of a stay "militates in favor of dismissal for mootness." United States v. GWI PCS 1, Inc., 230 F.3d 788, 801 (5th Cir. 2000).

Second, when this appeal was filed the compromise and settlement already had been substantially consummated. Under Section 11 of the Bankruptcy Code, a plan is substantially consummated when: (1) substantially all property has been transferred under the plan, (2) the debtor, or the successor of the debtor has assumed control and management of substantially all of the property, and (3) distribution of the property has commenced. 11 U.S.C. § 1101(2); Manges, 29 F.3d at 1041. At the hearing held on November 7, 2005, the parties essentially agreed that the settlement already was substantially consummated. *See* Transcript of Hearing (Document 14) at 36. In particular, all interests in First Capital and Blue Moon had been delivered to the Trustee for the benefit of the bankruptcy estate, Riner had been fully paid and the majority of his payment had been dispersed, the IRS has been fully paid, and all litigation other than this appeal had been dismissed. Id. at 29-30. While Hilal makes much of the fact that this case deals with a compromise and settlement, not a plan of reorganization as was the case in Manges, the Fifth Circuit has indicated that its mootness analysis applies equally to settlements

10

and to reorganization plans.  *See* Matter of Morningside Mobile Home RV Park, 32 Fed. Appx. 130 (5th Cir. 2002) (upholding district court's dismissal of an appeal of a bankruptcy court's settlement order on the basis of mootness).  Therefore, the substantial consummation of the compromise and settlement also weighs in favor of dismissal for mootness.

Third, were Hilal's appeal of the 9019 Order considered on the merits, and were such consideration to lead to a reversal of the Bankruptcy Court's 9019 Order, the rights of others who are not parties to this appeal would be substantially affected and the administration of the bankruptcy estate and the reorganization plan would suffer.  The effect on third parties is important because although "substantial consummation of a reorganization plan is a momentous event, [ ] it does not necessarily make it impossible or inequitable for a [ ] court to grant effective relief."  In re U.S. Brass, 169 F.3d 957, 961 (5th Cir. 1999) (quoting Manges, 29 F.3d at 1042-43).  Rather, the court must determine if the plan has been implemented to the point that changing it would harm other parties.  In re Efficient Solutions, Inc., 2001 WL 1636843 *5 (E.D.La.).

Here, although the pending suit is between Hilal and the Trustee, the agreement in question also involves Riner and the IRS.  Although few third parties that would be directly affected, the effect on those few third parties would be substantial.  Riner's attorney represented at the November 7, 2005, hearing that loans had been pledged to third parties and that other proceeds had been converted to stocks and bonds.  Transcript of Hearing (Document 14)

11

at 30. Additionally, the litigation between Riner and the Trustee had been dismissed. This case is similar to Hammersmith, where the court held that "unwinding the Plan would require, *inter alia*, the return of property and distributions, the reinstatement of lawsuits dismissed with prejudice, and the reattachment of liens. It is unlikely that [the 5th Circuit] could return the Debtor estate[] or the affected third parties to the status quo as it existed before consummation of the Plan." Hammersmith, 2001 WL 184591 *5 (5th Cir.). Similarly, dissolving the settlement in this case would substantially harm third parties who are relying on the proceeds of the estate for loans and other pledges of interest.[5] Therefore, the adverse effect on third parties also weighs in favor of dismissal for mootness.

In all, the factors to be considered compel a conclusion that this action should be dismissed as equitably moot. There are no countervailing factors that would warrant a different conclusion.[6]

---

[5] In addition, through the passage of time, substantial additional progress has been made in the bankruptcy proceeding. Upon consummation of the compromise and settlement and regaining First Capital and Blue Moon for the estate, the Trustee proposed a Chapter 11 Plan, which the Bankruptcy Court has approved. That Plan is based, in substantial part, upon the Trustee having recovered First Capital and Blue Moon for the estate, those two companies making up the principal assets of the estate.

[6] In In re Enron, 326 B.R. 497, 502-503 (S.D.N.Y. 2005), the District Court set forth a list of five factors that could, if *all* factors were present, weigh in favor of deciding an appeal that would otherwise be equitably moot. All of those factors have not been shown to be present here.

V.  Order

Based on the foregoing, and the conclusion that Appellant's challenge to the 9019 Order entered by the Bankruptcy Court is effectively and equitably moot, it is

ORDERED that Appellee's Motion to Dismiss (Document No. 3) is GRANTED, and this appeal is DISMISSED as MOOT.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this 9th day of August, 2006.

```
                              _____
                                  EWING WERLEIN, JR.
                              UNITED STATES DISTRICT JUDGE
```